# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**MICHAEL P. CULLEN,**

Plaintiff,

v.

**CAROLYN W. COLVIN**,
Acting Commissioner of Social Security,

Defendant.

Case No. 6:15-cv-00517-SI

**OPINION AND ORDER**

Howard D. Olinsky, Olinsky Law Group, 300 S. State Street, Suite 420, Syracuse, NY 13202;
Philip W. Studenberg, 230 Main Street, Klamath Falls, OR 97601. Of Attorneys for Plaintiff.

Billy J. Williams, Acting United States Attorney, and Janice E. Hebert, Assistant United States
Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite
600, Portland, OR 97201; L. Jamala Edwards, Special Assistant United States Attorney, Office
of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S
221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Michael Patrick Cullen ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's

application for Disability Insurance Benefits ("DIB"). For the following reasons, the

Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla but less than a preponderance . . . ." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed an application for DIB on October 4, 2011, alleging disability beginning July 4, 2011. AR 76. He was 49 years old at the alleged disability onset date. AR 77. He alleged disability due to back pain. AR 77, 167. The Disability Determinations Service

denied his application initially on December 30, 2011, and upon reconsideration on

May 23, 2012. AR 98-101, 104-06. Plaintiff subsequently requested a hearing before an

Administrative Law Judge ("ALJ"). *Id.* An administrative hearing was held on August 23, 2013.

AR 111. After considering all the evidence in the record, the ALJ concluded that Plaintiff was

not disabled under the Social Security Act. AR 13-27. The Appeals Council considered the

record, including additional evidence submitted, but denied Plaintiff's request for review,

making the ALJ's decision the final order of the Commissioner. AR 1-5. Plaintiff now seeks

judicial review of that final order.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (Supplemental Security Income); *Bowen v. Yuckert*, 482 U.S. 137,

140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The

five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R.
   §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
   significant mental or physical duties done or intended to be done for pay
   or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
   such work, she is not disabled within the meaning of the Act. 20 C.F.R.
   §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
   substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's
   regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An

impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ began her decision by noting that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015.[1] AR 18. The ALJ then applied the sequential process. AR 18-26. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date through his date last insured. AR 18. At step two, the ALJ determined that Plaintiff's lumbar degenerative disc disease and adjustment disorder with depressed mood were severe impairments. *Id.* The ALJ found Plaintiff's tinnitus, psoriasis, polyps, and lung condition were not severe impairments, but "in an abundance of caution" included noise and airborne irritant restrictions in Plaintiff's RFC. *Id.* At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments. AR 20.

The ALJ then determined Plaintiff's RFC, finding that he can:

> perform light work as defined in 20 [C.F.R. §] 404.1567(b). The claimant can lift and/or carry 20 pounds occasionally, and 10 pounds frequently. The claimant can sit for 6 hours in an 8-hour workday, and can stand and/or walk for 6 hours in an 8-hour workday. The claimant should be allowed to alternate sitting or standing in frequent bilateral pushing and/or pulling, and frequent

---

[1] The ALJ's opinion stated that the date last insured is December 31, 2016, but that appears to be a scrivener's error. AR 76-77, 85.

bilateral foot control operation. The claimant should never climb
ladders, ropes, or scaffolds. The claimant can occasionally stoop.
He can occasionally crouch. The claimant should avoid
concentrated exposure to excessive noise. He should avoid
concentrated exposure to irritants such as fumes, odors, dust,
gases, and poorly ventilated areas. The claimant can understand
and carry out simple instructions. He can have occasional
interaction with the public, co-workers, and supervisors.

AR 21. At step four, the ALJ determined that Plaintiff was unable to perform past relevant work.

AR 25. Lastly, at step five, the ALJ reviewed Plaintiff's RFC, age, education, and work

experience, and determined that there exist significant numbers of jobs in the national economy

that Plaintiff could perform. AR 26.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) improperly discounting Plaintiff's credibility;

(B) failing properly to develop the record; (C) failing to include in the RFC determination

sufficient limitations relating to Plaintiff's moderate difficulties in concentration, persistence, or

pace; and (D) making an improper step five determination.

## A.  Plaintiff's Credibility

Plaintiff argues that the ALJ's credibility determination is not supported by substantial

evidence because it improperly evaluated Plaintiff's inconsistent statements and failed to address

Plaintiff's testimony regarding his limited participation in daily activities.

There is a two-step process for evaluating the credibility of a Plaintiff's own testimony

about the severity and limiting effect of his or her symptoms. *Vasquez v. Astrue*, 572

F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented

objective medical evidence of an underlying impairment 'which could reasonably be expected to

produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th

Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When

doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures, other than treatment the individual uses or has used, to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a

negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, the Ninth Circuit has held that an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid[,] [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . ." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1997.

At the first step of the credibility framework, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms . . . ." AR 22. At the second step however, the ALJ did not find Plaintiff's statements "concerning these symptoms to be credible." *Id.* The ALJ offered four reasons for her adverse credibility finding: (1) Plaintiff stopped working for reasons other than medical disability; (2) Plaintiff gave inconsistent statements about his capacity to work; (3) Plaintiff reported subjective symptoms that are inconsistent with the objective medical evidence; and (4) Plaintiff did not seek mental health treatment. AR 25.

### 1. Plaintiff stopped work for reasons other than medical disability.

The ALJ determined that Plaintiff "stopped working for reasons unrelated to a medical disability." AR 22. In *Bruton v. Massanari*, the Ninth Circuit found that the claimant's statement that he left his job because he was laid off, rather than because of disability, was one of three sufficient reasons for disregarding the claimant's pain testimony. 268 F.3d 824, 833 (9th Cir. 2001); *see Page v. Colvin*, 620 F. App'x 605, 605 (9th Cir. 2015) (noting that an ALJ's credibility determination may reasonably rely on a claimant's inconsistent statements as to why

he left his job); *see also Asbury v. Colvin*, 2015 WL 6531325, at *7 (D. Or. Oct. 28, 2015) (holding that an ALJ properly discredited the plaintiff's testimony because the plaintiff left his job for nondisability-related reasons).

The ALJ supported her finding that Plaintiff stopped working for reasons other than medical disability in part by citing Plaintiff's testimony that his most recent job ended "when he was laid off because the worksite was shutting down." AR 22, 43, 92. The ALJ also explained that when asked whether Plaintiff could have continued to work at the previous job medically, if not for the lay off, Plaintiff testified that he did not know. AR 43. Additionally, the ALJ referenced Plaintiff's testimony that he injured his back one and one-half days before he stopped working and was able to work his scheduled shifts despite his injury. AR 22.

Plaintiff argues that the ALJ improperly concluded that Plaintiff stopped working for reasons other than a disabling condition. Plaintiff relies on *Carlson v. Astrue*, 682 F. Supp. 2d 1156, 1167 (D. Or. 2009), which notes that a social security claimant may not be criticized for attempting to work despite disabling conditions and cites to *Lingenfelter*, 504 F.3d at 1038. In *Carlson*, the claimant had a progressively worsening condition, and worked for many years before the condition became disabling. 682 F. Supp at 1166. In *Lingenfelter*, the Ninth Circuit held that an ALJ may not discredit a Plaintiff's testimony solely for the reason that Plaintiff "tried to work for a short period of time and, because of his impairments, *failed*." 504 F.3d at 1038 (emphasis in original).

Plaintiff's case presents a somewhat unique situation in that his alleged injury onset date is only one and one-half shifts before his expected layoff date. Plaintiff did work those shifts, but testified that his supervisor was unhappy with Plaintiff's performance and told him that he needed to pick up his speed. AR 43-44. Plaintiff explains that he was barely able to work his last

shifts because his "lower back was throbbing" and he "could [not] move fast enough." AR 44.

When directly questioned at his hearing, Plaintiff stated that he did not know whether he could

have continued working beyond those one and one-half shifts with his injury. AR 43. Plaintiff

did testify, however, that after being laid off he continued to apply for work. AR 45.

Under these facts, it is plausible from the record that Plaintiff stopped working because

he was laid off and was unable to find another job. It is equally plausible that Plaintiff would

have stopped working due to his injury if his job had not concluded on July 18th. Where there

are two rational interpretations of the evidence, the ALJ's interpretation is upheld. *See*

*Burch*, 400 F.3d at 679; *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Thus,

the ALJ's finding that Plaintiff stopped working for reasons other than disability is sustained.

**2. Plaintiff gave conflicting statements about his work capacity.**

The ALJ also determined that Plaintiff "has made inconsistent statements about his

ability to work, which undermines his credibility." AR 22. Specifically, the ALJ noted that

Plaintiff filed for and began receiving unemployment benefits in 2011, while simultaneously

filing for disability in October of 2011, alleging he was injured and unable to work as of

July 4, 2011. *Id.* A claimant's receipt of unemployment benefits is an improper reason to

discredit a claimant's testimony, unless the record establishes that the claimant held himself out

as being available for full-time work. *Davis v. Colvin*, 2016 WL 424992, at *5 (D. Or. Feb. 3,

2016) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

In Plaintiff's DIB application, he stated that he "became unable to work because of [his]

disabling condition on July 4, 2011." AR 134. The ALJ pointed out that Plaintiff later testified

that he was trying to find work while he was on unemployment. AR 45. When asked specifically

what type of work he was seeking, Plaintiff said he was looking for "anything [he] could

possibly find," and concentrating on "mills, trucking companies, restaurants, [and] gas stations."

*Id.* Thus, Plaintiff admittedly applied to heavy labor jobs, which directly contradicted his statement that he was unable to work as of July 4, 2011. It also contradicted Plaintiff's testimony that his legs often go numb, and that he cannot sit for more than 15 minutes nor stand for more than 20 minutes. AR 50, 57-59. Plaintiff further explained that he was not asked for an interview from any of his applications, and thought it was because potential employers saw that he was limping. AR 46. The ALJ noted, however, that Plaintiff did not state he had any kind of medical condition on his job applications. *Id.* The record shows that Plaintiff held himself out to be available for full time work, particularly heavy labor, and thus the ALJ did not err in concluding this fact undermined Plaintiff's credibility.

Plaintiff argues that the ALJ improperly discredited Plaintiff's testimony because he simultaneously sought disability and unemployment benefits. Plaintiff draws attention to the SSA Chief Administrative Law Judge's position that "individuals need not choose between applying for unemployment insurance and Social Security disability benefits." Memorandum from Chief ALJ Frank A. Cristaudo: Receipt of Unemployment Insurance Benefits by Claimant Applying for Disability Benefits - INFORMATION (November 15, 2006; reissued August 9, 2010). This Social Security Administration ("SSA") memorandum also cautions that:

> application for unemployment benefits is evidence that the ALJ must consider together with all of the medical and other evidence. Often, the underlying circumstances will be of greater relevance than the mere application for and receipt of the benefits. For instance, the fact that a person has, during his or her alleged period of disability, sought employment at jobs with *physical demands in excess of the person's alleged limitations* would be a relevant factor that an ALJ should take into account.

*Id.* (emphasis added). In accordance with the SSA's memo, the ALJ did not find Plaintiff to be less than fully credible merely because he filed for both disability and unemployment benefits, but because Plaintiff's statements regarding his incapacity to work in his disability application

were inconsistent with his applications to jobs with physical demands in excess of his alleged limitations. It was reasonable for the ALJ to conclude that someone whose legs go numb and who cannot sit or stand for more than 15 minutes would not honestly apply to jobs like trucking, mill work, restaurants, and gas stations. AR 45. Accordingly, the ALJ provided another clear and convincing reason to discount Plaintiff's credibility.

### 3. Plaintiff reported subjective symptoms inconsistent with objective evidence.

Next, the ALJ discounted Plaintiff's credibility because his "subjective report of back pain is not fully supported by the objective medical evidence." AR 23. Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis. *Burch*, 400 F.3d at 680.

The ALJ explained that Plaintiff reported a history of back pain worsening after he lifted a refrigerator with his wife and "felt a pull in the left low back" on July 4, 2011. AR 23, 270. The ALJ also noted that Plaintiff testified to falling out of a chair six weeks after the July 4th accident, and felt "tingling in his left foot with cramps and low back pain ever since." *Id.* Christopher Bolz, M.D., Plaintiff's treatment provider, reported that Plaintiff walked "very slowly, and was slightly flexed at the waist." *Id.* Dr. Bolz's examination also stated that Plaintiff could forward flex within a foot of the floor, had a positive straight leg raise test at 10-20 degrees bilaterally, and "had no CVA tenderness" with "some tenderness over the left SI joint and buttocks." *Id.* Plaintiff's lumbosacral spine x-ray showed "minimal degenerative changes from the T11-L5 disc spaces." Initially, Plaintiff could not afford Dr. Bolz's recommended MRI examination and physical therapy. AR 23, 264. The ALJ noted that Dr. Bolz prescribed stretching, Vicodin, and strongly recommended that Plaintiff lose weight and stop smoking. *Id.* Additionally, Plaintiff's October 13, 2011 lumbar MRI examination results were "completely normal for age." AR 23, 261.

After reviewing the medical evidence, the Court finds that the ALJ's conclusion that Plaintiff's subjective complaints of back pain are not consistent with the objective medical evidence is supported by substantial evidence in the record.

### 4. Plaintiff did not seek mental health treatment.

The ALJ determined that Plaintiff "has alleged that he has mental health problems, but he has not sought treatment, which further undermines his credibility." AR 23. A relevant factor to an ALJ's credibility determination may include "unexplained, or inadequately explained, failure to seek treatment." *Bunnell*, 947 F.2d at 346 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). When a plaintiff "provides evidence of a good reason for not taking medication for her symptoms," however, "her symptom testimony cannot be rejected for not doing so." *Smolen*, 80 F.3d at 1284. An ALJ may not chastise a claimant for failing to seek treatment he cannot afford. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Moreover, the Ninth Circuit has "criticized the use of a lack of treatment to reject mental health complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

The ALJ supported her finding of adverse credibility with evidence that Plaintiff consistently alleged mental health problems but never sought treatment. On May 16, 2012, Plaintiff reported to Paula Belcher, Ph.D., that he feels irritable most of the time because "he cannot do what he wants to do." AR 23, 277. In that same psychological assessment, Plaintiff explained that since he lost his job, he experiences "brief episodes of depressed mood that last up to a day." AR 23, 278. Additionally, Plaintiff told Dr. Belcher that he has little energy and "gained 35 pounds in the past year." *Id.* Dr. Belcher diagnosed Plaintiff with an Axis I

Adjustment Disorder with Depressed Mood. AR 23, 279. Plaintiff admitted that he has never sought counseling and there is no evidence that he tried any medication management for his depression. AR 23, 278. Plaintiff also testified, however, that he could not afford extra medical treatment, such as an MRI and physical therapy. AR 260. Moreover, there is no evidence in the record that the ALJ questioned Plaintiff regarding any mental health treatment at the administrative hearing. AR 37-75.

Discrediting Plaintiff for failure to seek mental health treatment is contrary to the case law concerning failure to seek mental health treatment. Thus, the ALJ's use of Plaintiff's failure to seek medical treatment in determining adverse credibility is error. When an ALJ makes an adverse credibility finding, "so long as there 'remains substantial evidence supporting the ALJ's conclusions'" regarding credibility, and "the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." *Carmickle*, 533 F.3d at 1162 (quoting *Batson*, 359 F.3d at 1197. Here, the ALJ provided three other clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's testimony. Therefore, the ALJ's decision regarding mental health treatment is harmless error and the ALJ's overall adverse credibility finding is upheld.

## B.  The Record Development

Plaintiff argues that the ALJ failed to develop the medical opinion evidence, specifically by failing to request opinions regarding Plaintiff's limitations from treating physicians Dr. Bolz and Marquita Belen, M.D., and by failing to request clarification from consultative examiner, James McHan, M.D. Plaintiff also alleges that the ALJ gave undue weight to non-examining physician Martin Lahr, M.D.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes

between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance

on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An

ALJ effectively rejects an opinion when he or she ignores it. *Smolen*, 80 F.3d at 1286.

## 1. The Opinions of Drs. Bolz and Belen

Plaintiff argues that the ALJ failed to request limitation opinions from Plaintiff's treating

physicians, Drs. Bolz and Belen. "An ALJ's duty to develop the record further is triggered only

when there is ambiguous evidence or when the record is inadequate to allow for proper

evaluation of the evidence." *Ludwig v. Astrue*, 681 F.3d 1047, 1055 n.30 (9th Cir. 2012) (citing

*Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)). Recently, in *Hughley v. Colvin*, the

Ninth Circuit held that the evidence was not ambiguous and therefore did not trigger the ALJ's

duty, because the "voluminous medical reports contained sufficient documentations of

[claimant's] symptoms." 2016 WL 145779, at *1 (9th Cir. Jan. 7, 2016). Moreover, 20 C.F.R.

§ 404.1520b(c)(1) does not mandate that an ALJ contact treating physicians. Rather, the

regulation gives an ALJ the discretion to contact a treating physician if the ALJ finds that the

evidence is ambiguous. *Id.*

Here, the ALJ reviewed the medical evidence and opinions, including the physical RFC

assessment of Dr. Lahr and Mary Ann Westfall, M.D., the consultative examination of

Dr. McHan, the psychological consultative examination of Dr. Belcher, the mental RFC

assessment of Dorothy Anderson, Ph.D., and the treatment records of Drs. Bolz and Belen, in

addition to considering lay-person testimony. The ALJ specifically discussed Dr. Bolz's notes.

AR 23. Dr. Bolz treated Plaintiff for back pain twice during the relevant period. AR 263.

Dr. Bolz's treatment notes were part of the record before the ALJ, but Dr. Bolz did not submit a

formal opinion regarding Plaintiff's limitations or capacity for work before the ALJ issued her

decision on September 10, 2013. Dr. Bolz's notes revealed that Plaintiff's back pain continued

throughout his treatment, but highlighted the "unremarkable" and "completely normal" MRI, and

explained that the "most likely diagnosis is muscular strain of his low back secondary to

deconditioning." AR 261. Contrary to Plaintiff's argument, the ALJ did not discount Dr. Bolz's

assessments.

Next, Dr. Belen treated Plaintiff for a variety of ailments, including back pain, during the

relevant period. AR 296-327. Dr. Belen's treatment notes were also part of the record before the

ALJ, but Dr. Belen did not submit a formal opinion regarding Plaintiff's limitations or capacity

for work before the ALJ issued her decision on September 10, 2013. Dr. Belen's notes reveal

that Plaintiff's back pain continued throughout his treatment, but also noted Plaintiff's normal

MRI, and suggested daily exercise to decrease back pain. AR 322. The ALJ explicitly discussed

Dr. Belen's treatment notes when determining Plaintiff's severe impairments. AR 19. Plaintiff

points to nothing in Drs. Bolz or Belen's records that raises an ambiguity sufficient to trigger the

ALJ's duty to develop the record further. Not every treating or examining physician must

provide a formal assessment of a social security claimant's limitations. Plaintiff bears the burden

of proving his disability, and "[a]n ALJ is required to recontact a doctor only if the doctor's

report is ambiguous or insufficient for the ALJ to make a disability determination. *Bayliss v.

Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ did not err by failing to contact

Plaintiff's treating providers for further information.

### 2. Dr. McHan's Consultative Examination

Plaintiff also argues that the ALJ failed to develop the record because she did not request

clarification of Plaintiff's limitations from Dr. McHan, Plaintiff's consultative examiner.

Dr. McHan examined Plaintiff on April 4, 2012, and diagnosed him with "low back pain with

varying inconsistent tenderness and osteoarthritis." AR 270, 274. Dr. McHan found that Plaintiff had a maximum standing and walking capacity of "probably" less than two hours, a maximum sitting capacity without limitation, and a maximum lifting and carrying capacity of no more than twenty pounds. *Id.* Dr. McHan stated that "all [Plaintiff's activities] subjectively cause pain . . . [d]ue to poor balance climbing is limited to never." *Id.* Dr. McHan found occasional reaching, handling, fingering, and feeling limitations for manipulative activities. *Id.* He noted that Plaintiff should have a decreased fumes working environment, "although he is still smoking." AR 274.

The ALJ gave Dr. McHan's opinion "little weight." AR 24. The ALJ provided three specific reasons for discounting Dr. McHan's opinion: (1) Dr. McHan's single examination relies heavily on Plaintiff's subjective complaints; (2) Dr. McHan's opinion is inconsistent with the "benign objective examination findings"; and (3) Dr. McHan's opinion is inconsistent with Plaintiff's report "that he is able to do home exercises, take walks with his wife, and camp when he has the money." *Id.* All three reasons are specific, legitimate reasons for giving Dr. McHan's opinion little weight that are endorsed by the Ninth Circuit. *See Tommasetti*, 533 F.3d at 1040-42. They are also supported by substantial evidence in the record.[2]

The ALJ did not express any concern about ambiguity in the evidence. The ALJ is not required to request clarification of a medical examination if she finds no ambiguity, and the ALJ stated specific and legitimate reasons for giving Dr. McHan's assessment little weight. 20 C.F.R. § 404.1520b(c).

---

[2]     The ALJ's adverse credibility determination regarding Plaintiff's testimony supports discounting Dr. McHan's opinion because the opinion was primarily based on Plaintiff's subjective comments concerning his condition. Notably, Dr. McHan acknowledged that Plaintiff's "maximum standing and walking capacity is based on subjective complaints." AR 274. Additionally, after performing a range of motion testing, Dr. McHan found "slight to 1+ spasm and tenderness in the paravertebral muscles" but "no point tenderness," and "no significant deformities except mild kypholordosis." AR 273. These unremarkable findings do not support the limitations that Dr. McHan described.

### 3. Dr. Lahr's Physical RFC Assessment

Plaintiff further argues that the ALJ gave Dr. Lahr's physical RFC assessment too much weight because Dr. Lahr is a non-examining physician and his opinion is not supported by substantial evidence in the record. The opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ explained that she gave substantial weight to Dr. Lahr's April 19, 2012 assessment. AR 23. The ALJ noted that Dr. Lahr's opinion is consistent with the evidence, including Plaintiff's lumbar x-ray report, "which showed minimal degenerative changes from the T11 through L5 disc spaces." AR 23. The ALJ also supported her determination by stating that Dr. Lahr's opinion is consistent with Plaintiff's statements regarding his hobbies and daily living activities. AR 23. Based on the clear and specific reasons for giving Dr. Lahr's non-examining assessment substantial weight, the Court finds that the ALJ properly evaluated the medical evidence.

## C. The RFC Determination

Plaintiff also argues that the ALJ's RFC determination failed to reconcile the ALJ's finding of moderate limitations regarding "concentration, persistence, or pace" at the listing stage. AR 20. Mental impairments are evaluated at steps two and three of the five-step sequential evaluation process using the special psychiatric review technique. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Using that technique, the ALJ first rates the degree of functional limitation resulting from a claimant's impairments, then determines the severity of those impairments. 20 C.F.R. §§ 404.1520a(b), 416.920a(b). Functional limitations are determined by assessing the functional areas of: (1) daily living activities; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). After the

functional limitations are determined, the ALJ determines if the severity of the impairment meets or equals a listed impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). If the impairment does not meet or equal a listing, the ALJ must then assess the claimant's mental RFC. 20 C.F.R. §§ 404.1520a(e), 416.920a(e).

The ALJ specifically found that Plaintiff has moderate difficulties "with regard to concentration persistence or pace" at the listing stage. AR 20. When an ALJ makes a finding of moderate limitations in concentration, persistence, or pace in step three, those limitations must be reflected in the RFC assessment. *Saucedo v. Colvin*, 2014 WL 4631225, at *17–18 (D. Or. Sept. 15, 2014) (failure to include limitations regarding concentration, persistence, or pace in the RFC is reversible error if the ALJ found such limitations at step three); *see also Lubin v. Comm'r Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013) ("The ALJ must include all restrictions in the [RFC] determination . . . including moderate limitations in concentration, persistence, or pace"). An "ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see also Brink v. Comm'r of the Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) (holding that an "ALJ's findings must be consistent with the restrictions supported in the medical testimony").

The ALJ supported her finding of moderate difficulties with Plaintiff's statement that his ability to follow instructions is "moderate" to "fair." AR 20, 187. The ALJ also noted that when Dr. Belcher interviewed Plaintiff, twice he "denied any problems with concentration . . . and spends time working on models . . . ." AR 278. Additionally, the ALJ points to Plaintiff's test performance on his mental status examination that indicated that he had "mild to moderate

impairment in concentration and memory." AR 21, 278. Next, the ALJ incorporated the step three finding of moderate difficulties into Plaintiff's RFC by determining that Plaintiff "can understand and carry out simple instructions." AR 21. Plaintiff argues that this RFC does not properly account for the ALJ's step three finding of moderate difficulties. "[S]o long as the ALJ's decision is supported by medical evidence, a limitation to simple, repetitive work can account for moderate difficulties in concentration, persistence or pace." *Bickford v. Astrue*, 2010 WL 4220531, at *11 (D. Or. Oct.19, 2010) (citing *Stubbs–Danielson*, 539 F.3d at 1174).

The ALJ's RFC limitation to "simple instructions" is supported in the medical record, specifically, Drs. Belcher's and Anderson's reports. AR 24. Dr. Belcher's psychological consultative examination noted that testing data "indicate that the client *may* have some mild to moderate impairment in concentration and memory." AR 276 (emphasis added). Dr. Belcher also noted that Plaintiff completed serial three's slowly with errors and could recall only one of three words when asked to remember 10 minutes later. AR 24, 276. Dr. Anderson noted that Plaintiff's "ability to understand and remember" and "to carry out . . . simple instructions" was "not significantly limited." AR 94. Dr. Anderson's mental RFC assessment concluded that Plaintiff can "carry out and maintain [concentration, persistence, or pace] for 1-2 step tasks." AR 24, 95. The Court finds that the RFC determination that Plaintiff can "understand and carry out simple instructions," properly incorporates the medical evidence of Plaintiff's limitations regarding concentration, persistence, or pace.

## D. Step Five Determination

Finally, Plaintiff argues that the ALJ's hypothetical question to the vocational expert ("VE") was reversible error because the question was not formulated based on substantial evidence in the record. Only limitations supported by substantial evidence may be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE.

*Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). The Court found that the ALJ's

RFC determination was supported by substantial evidence in the record. Thus, the hypothetical

question, which reflects the limitations identified in the RFC, is sustained.

## CONCLUSION

The Commissioner's decision is based on substantial evidence in the record. The ALJ's

decision that Plaintiff is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 22nd day of February, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge